UNITED STATES DISTRICT COURT WESTERN
DISTRICT OF NEW YORK
_____

CRAIG R. MILTON,

                          Plaintiff,

              v.

ELYSA McCLINTIC and WILLIAM McCLINTIC,

                        Defendants.
_____

<u>DECISION AND ORDER</u>

22-CV-6077L

      Plaintiff Craig R. Milton, through counsel, brings this action against Elysa and William McClintic, pursuant to 42 U.S.C. § 1983. Plaintiff alleges that both defendants are physicians and that they violated his constitutional rights in connection with certain events that occurred when he was receiving medical treatment in February 2019, as explained below.

      Service of process has been effected on both defendants, but William McClintic has not yet appeared in this action. Elysa McClintic ("Dr. McClintic") has filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND

      The complaint alleges the following facts, which for purposes of the pending motion are accepted as true. Plaintiff is a United States Navy veteran who resides in Elmira, New York. In the past, he has received medical treatment at a health clinic in Elmira that is administered by the Department of Veterans Affairs ("VA").

On or about February 8, 2019, at the recommendation of an optometrist at the Elmira VA Clinic, plaintiff underwent surgery to correct a medical problem around his eyes. The surgery was performed by Dr. McClintic at Guthrie Robert Packer Hospital ("Packer") in Sayre, Pennsylvania, where Dr. McClintic was employed. Neither Packer nor Dr. McClintic have any direct association with the VA.

On February 13, 2019, plaintiff saw Dr. McClintic at Packer for a followup visit. During their conversation, he told her that although he was supposed to have been completely anesthetized during the operation, he was awake during part of it, and that he was unable to speak but he tried, unsuccessfully, to alert her to that fact by moving his arms and legs. He alleges that although he was in "tremendous pain" during the procedure, and that at the followup visit he thanked Dr. McClintic for working quickly so as not to "drag it out and make the surgery more painful." Complaint ¶¶ 14, 16.

At some point in the conversation, Dr. McClintic mentioned that she knew that plaintiff carried a pistol in his pocket. Plaintiff, who at the time possessed both New York and Pennsylvania "concealed carry" permits, said that he did, and removed what he describes as a "miniature palm pistol" from his pocket. He alleges that he held it flat against his chest with one hand, and with the other hand pointed out the various parts of the pistol. He explained that he carried it for self-defense and that although he kept a spent round in the chamber, there were four more live bullets in the gun. Dr. McClintic made no response other than to raise one eyebrow. Shortly thereafter, the session came to an end, and plaintiff left.

A week later, plaintiff received a letter from the Bradford County (Pa.) Sheriff, which "labeled [him] a 'Danger to the General Public'" and directed him to turn over his Pennsylvania

pistol permit within five days.  He called the sheriff, who told him that someone from the VA had reported plaintiff for showing his pistol to Dr. McClintic.  *Id.* ¶ 27.

Plaintiff states that based on reports that he has obtained from the Sayre Police Department and the VA, he believes that the source of this report was William McClintic, who is Dr. McClintic's father-in-law.  According to plaintiff, William McClintic, who is also a physician, had previously worked at Packer, and at the time of these events was employed by the VA.  Plaintiff alleges that William McClintic, with the "encourage[ment]" of Dr. McClintic, falsely reported that plaintiff had brandished a firearm on federal property, and threatened a federal employee, *i.e.*, Dr. McClintic, by pointing his pistol at her face.  Plaintiff states that these accusations were false not only because he did not point his gun at Dr. McClintic, but because Packer is a private hospital not affiliated with the VA or any other federal agency, and because Dr. McClintic is not a federal employee.

Plaintiff alleges that William McClintic's report led to the issuance of a disruptive-behavior report by the VA Health System, which repeated William McClintic's allegations and also falsely characterized plaintiff as having been "very upset, angry, shaking, and unstable appearing" during the February 13 followup visit.  The report also stated that Dr. McClintic reported that plaintiff had been talking about his pistol and about knives while he was sedated, during the surgery.

Apparently some report was made to officials in New York as well.  On March 6, 2019, Chemung County (N.Y.) Court Judge Christopher P. Baker issued an order suspending plaintiff's New York pistol permit and ordering him to surrender his registered pistols.  The order was

carried out on March 15, 2019, by two Chemung County sheriff's deputies who seized four pistols registered to plaintiff.

Plaintiff had one more followup visit with Dr. McClintic on March 13, 2019, which apparently went off without incident. From March 11, 2019 to January 30, 2020, he was barred (apparently by the VA) from returning to the Elmira VA clinic for any reason. During that time, he had to travel over forty miles to the Bath, New York VA Medical Center for medical care, and he was required to notify local law enforcement prior to any visit there.

Based on these allegations, plaintiff asserts six claims for relief under § 1983, all of which are asserted against both defendants: (1) malicious prosecution; (2) violation of his rights to procedural and substantive due process; (3) conspiracy to violate plaintiff's civil rights; (4) denial of the "right to a fair proceeding," in violation of the Fifth, Sixth and Fourteenth Amendments; (5) violation of plaintiff's Second Amendment right to keep and bear arms; and (6) unlawful retaliation for plaintiff's exercise of his right to free speech under the First Amendment.


**DISCUSSION**

**I. State Actor Requirement**

To plead a claim under § 1983, a plaintiff must allege that he was injured by a state actor or a private party acting under the color of state law. *Ciambriello v. Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). A private party acts under color of state law when there is such a close nexus between her conduct and the state that the defendant's conduct may fairly be treated as that of the state itself. *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003). In support of her motion to dismiss, Dr. McClintic asserts that plaintiff has not alleged facts sufficient to satisfy

this requirement.  The Court agrees.  Dr. McClintic clearly is not a state actor and her acts were not such as to be tantamount to acts of a state employee.

Plaintiff, remarkably, concedes much in the complaint.  Plaintiff expressly alleges that at all relevant times, Dr. McClintic was a "private doctor," not employed by the government, and that the hospital where she worked, Packer, "was a private hospital not affiliated in any way with the VA or any other Federal department in any way, shape, or form ... ."  Complaint ¶ 30. Accepting the truth of plaintiff's allegations, it could hardly be any clearer that Dr. McClintic could in no way be deemed a state actor.  *See Mir v. Kirchmeyer*, No. 20-1659, 2021 WL 4484916, at *5 (2d Cir. Oct. 1, 2021) ("The Hospital defendants [employees of the hospital where plaintiff worked, who allegedly conspired to deprive plaintiff of his right to practice medicine] are private parties who are not liable under section 1983").

In his response to the motion to dismiss, plaintiff states that Dr. McClintic can be considered a state actor because she is alleged to have conspired with her father-in-law, codefendant William McClintic, who at the time was a VA physician.  Plaintiff also notes that defendants did not simply accuse plaintiff of a crime; they reported that plaintiff had threatened a federal employee with a firearm on federal property.

That argument is flawed in so many ways, it is difficult to know where to begin.  For one thing, even assuming that William McClintic was in fact employed by the VA and that his report led the VA to take some action, he is not a *state* actor for purposes of § 1983.  The word "state" in "state actor" literally refers to the states of the Union and their political subdivisions, not to the United States of America, *i.e.* the federal government.  *See Nghiem v. U.S. Dep't of Veterans Affairs*, 323 F.App'x 16, 18 (2d Cir. 2009) (district court properly dismissed § 1983 claims

against VA employees because that statute applies only to state actors, not to federal officials);

*Bozgoz v. James*, No. 19-239, 2020 4732085, at *9 (D.D.C. Aug. 14, 2020) ("there are no state

actors named as defendants in the complaint–all defendants are federal employees.  Thus, section

1983 does not apply") (footnote omitted).

Perhaps unaware of this distinction, plaintiff has not argued that the Court should

construe the complaint as asserting a claim under *Bivens v. Six Unknown Fed. Narcotics Agents*,

403 U.S. 388 (1971), which is an analog to a § 1983 claim for claims against federal employees.

Even if the Court were to treat the complaint as asserting a *Bivens* claim, it would be subject to

dismissal.  In *Bivens*, the Supreme Court "recognized an implied cause of action to recover

damages from federal officers who violate constitutional rights in only three narrow

circumstances," none of which apply here.  *Elhady v. Unidentified CBP Agents*, 18 F.4th 880,

883 (6th Cir. 2021).

Second, that defendants allegedly accused plaintiff of threatening a federal employee, or

possessing a firearm on federal property, is wholly irrelevant.  Aside from the federal/state issue

explained above, the substance of an accusation does not determine whether the accuser is or is

not a state actor.  Plaintiff must still allege some facts indicating that the *party* who made the

accusation "may fairly be said to be a state actor."  *Grogan v. Blooming Grove Vol. Ambulance

Corps*, 768 F.3d 259, 264 (2d Cir. 2014) (internal quotation omitted).

In addition, the mere fact that Elysa and William McClintic are alleged to have acted

jointly is not enough to hold Elysa McClintic liable under § 1983.  Again, William is not a state

actor, but even if he were, or if the Court were to treat the complaint as asserting a *Bivens* claim,

*see* n.1 *supra*, plaintiff has not alleged sufficient facts to state a claim against Elysa.  His

allegations that she misrepresented the facts and that she "encouraged" William McClintic to file a report fall far short of what is required to state a § 1983 or *Bivens* claim against a private citizen. *See Akande v. Philips*, 386 F.Supp.3d 281, 291 (W.D.N.Y. 2019) (conclusory allegations of conspiracy between private parties and federal agents were insufficient to state a *Bivens* claim); *see also Andresen v. Diorio*, 349 F.3d 8, 13 (1st Cir. 2003) ("[I]t is settled that the fact that private parties give the police information on which official action is then taken does not by itself convert the private parties into state actors").

**II. Other Matters**

The absence of state action provides grounds enough to dismiss plaintiff's claims against Dr. McClintic, but the Court notes that the individual claims suffer from a host of other defects as well. They do not merit a lengthy discussion, but the Court will briefly address them.

The malicious-prosecution claim fails because plaintiff has not alleged that any criminal proceeding occurred as a result of defendants' acts, much less that any such proceeding terminated in his favor. *See Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020); *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010).

Plaintiff's due process claim and his Second Amendment claim both arise out of the suspension of plaintiff's pistol permit and the confiscation of his handguns. Like his other claims, these suffer from a number of defects. First, with respect to due process, plaintiff has no constitutionally protected interest in possessing a permit to carry a handgun. *See Weinstein v. Krumpter*, 386 F.Supp.3d 220, 234 (E.D.N.Y. 2019) (stating the plaintiff's "due process claim

regarding his handgun license and handguns do not state a claim" based on settled law that "there is no protectible interest in a New York State-issued handgun license").[1]

Second, even if plaintiff had a protected interest in the permit or in the guns themselves, adequate process was available to him.  Plaintiff has not even responded to defendant's argument that he could have challenged the suspension of his New York permit by means of an Article 78 proceeding.  *See Oquendo v. City of New York*, 492 F.Supp.3d 20, 29 (E.D.N.Y. 2020) ("It is well settled that an Article 78 proceeding 'is an adequate remedy to challenge decisions with respect to firearms licenses'") (citing *Johnson v. DeProspo*, No. 19-cv-8426, 2019 WL 6311882, at *4 (S.D.N.Y. Nov. 22, 2019) (collecting cases)).

Nor can a claim of a substantive due process violation be based on the facts alleged here. To establish a deprivation of substantive due process, a plaintiff must allege governmental action so egregious or outrageous that it can be said to "shock the contemporary conscience."  *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005).  No such action has been alleged.

Plaintiff's reliance on the Second Amendment fares no better.  As the United States Supreme Court has noted, "the right secured by the Second Amendment is not unlimited," and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).  From the allegations of the complaint, it appears that plaintiff's pistol permit was suspended based on certain factual findings by the state court, made pursuant to state law.  Plaintiff has alleged no

---

[1] The complaint alleges that the Chemung County Court's March 6, 2019 order "suspend[ed]" his New York pistol permit.  Complaint ¶ 36.  Plaintiff has also submitted a copy of an order of that court dated October 21, 2021, denying plaintiff's letter motion seeking "reconsideration of the suspension."  (Dkt. #8 at 4.)  It is not apparent how long the suspension was to last, but presumably it is not a permanent revocation.

facts indicating that the underlying laws and regulations are unconstitutional or that they were applied in an unconstitutional manner. *See Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012) (upholding New York statute restricting individuals' ability to carry handguns in public).

In any event, Dr. McClintic did not make the decision to suspend plaintiff's permit. She reported an incident in which plaintiff allegedly brandished his pistol, and though plaintiff disagrees with her account of what happened, by no stretch of the imagination could she be said to have violated his rights under the Second Amendment. The connection between Dr. McClintic's report and the eventual suspension of plaintiff's pistol permit, which was ordered by a court, is far too attenuated to support a claim Second Amendment claim against her.

As indicated in the discussion of the state-actor requirement, there is no basis for a civil rights conspiracy claim. A complaint alleging a § 1983 conspiracy must allege more than "conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002). Plaintiff's allegation that Dr. McClintic "encouraged" William McClintic to file a report falls far short of that standard.

Plaintiff's fourth claim for relief is so poorly articulated that the Court is unsure what the nature of the claim is supposed to be. It is essentially a hodgepodge of amorphous rights to "justice" and "fair dealing." To the extent that these fall under the rubric of due process, they are subsumed in plaintiff's due process claim, which has been addressed. To the extent that plaintiff seeks to assert some ill-defined rights under the Sixth Amendment, that amendment only applies to criminal proceedings, and there is no allegation that criminal proceedings were ever brought

against plaintiff in connection with these events. *See Lopez v. City of New York*, No. 05-CV-3624, 2007 WL 2228150, at *10 (E.D.N.Y. July 31, 2007) (the Sixth Amendment, by its terms, "applies only to criminal proceedings").

Plaintiff's sixth claim for relief, alleging First Amendment retaliation, is patently meritless.  To establish such a claim, the plaintiff must show, *inter alia*, that he engaged in protected speech.  He has not done so.  Plaintiff alleges that defendants took action against him, in the form of a false allegation that he had threatened Dr. McClintic with a pistol, in retaliation for certain statements that he made to her that defendants took to mean that he was dissatisfied with how she performed the surgery.  Even if that is exactly what happened, this was a conversation between a private physician and her patient about his particular case.  These events in no way implicate the First Amendment's guarantee of the right to free speech, free from government interference.

In his response to the motion to dismiss, plaintiff contends that he has "sufficiently pled an abuse of process claim," even though by his own admission the phrase "abuse of process" never appears in the complaint.  Borrowing a principle more typically applied in the context of *pro se* pleadings, plaintiff apparently thinks that the Court should read the complaint so generously as to determine whether the basis for such a claim might be lurking among the facts alleged, even though not expressly pleaded.

No such basis exists.  An abuse of process claim brought under § 1983 is analyzed under New York tort law, and requires that the defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or

-10-

justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).[2]

In order to state a § 1983 claim for abuse of process, the plaintiff must establish that the defendants had an improper purpose in instigating the action and that they aimed to achieve a collateral purpose beyond or in addition to the underlying proceeding. *Morales v. City of New York*, 752 F.3d 234, 238 (2d Cir. 2014) (quoting *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003)). An abuse of process cause of action therefore requires an ulterior purpose such as "infliction of economic harm, extortion, blackmail and retribution." *Brandon v. City of New York*, 705 F.Supp.2d 261, 275 (S.D.N.Y. 2010). In addition, "[t]he pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim." *Lopez v. City of New York*, 901 F.Supp. 684, 91 (S.D.N.Y. 1995).

In his memorandum of law–*not* in the complaint–plaintiff asserts that "Dr. McClintic instigated legal process against Mr. Milton – i.e., the pistol permit revocation proceeding – by falsely reporting to defendant William McClintic that Mr. Milton threatened her with a firearm." (Dkt. #8-1 at 18.) In other words, Dr. McClintic falsely told her father-in-law that plaintiff had threatened her with a gun, he in turn filed a report with the VA and the local sheriff's department, and that eventually led to the pistol permit revocation proceeding. Plaintiff claims that defendants' motive in doing so was to discredit him, because they were afraid that he might bring a malpractice action against Dr. McClintic. *Id.*

_____

[2] The New York Court of Appeals has described the tort of abuse of process as "seldom considered," "obscure," and as "one which is rarely brought to the attention of the courts." *Board of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc.*, 38 N.Y.2d 397, 399, 400 (1975).

That is not enough to make out a § 1983 claim for abuse of process.  For one thing, § 1983 liability "may not be predicated on a claim of malicious abuse of *civil* process." *Wagner v. Hyra*, 518 F.Supp.3d 613, 627 (N.D.N.Y. 2021) (quoting *Alroy v. City of N.Y. Law Dep't*, 69 F.Supp.3d 393, 402 (S.D.N.Y. 2014)).  The pistol permit revocation proceedings were civil, not criminal in nature. *See Waltier v. NYPD*, 856 F.Supp. 196, 200 (S.D.N.Y. 1994).

In addition, under New York law, the "[p]rocess" referred to in tort law is a "direction or demand that the person to whom it is directed shall perform or refrain from the doing of some prescribed act." *Williams v. Williams*, 23 N.Y.2d 592, 596 (1969) (internal citation omitted).  Examples include "writs of attachment, execution, garnishment," sequestration proceedings, arrest or criminal prosecution, or "even such infrequent cases as the use of a subpoena for the collection of a debt." *Id.* at 610, n.1 (quotation marks and citation omitted); *see also Greco v. Christoffersen*, 70 A.D.3d 769 (2d Dep't 2010) (holding that "the mere commencement of a lawsuit cannot serve as the basis for a cause of action alleging abuse of process" and that interference with person or property comes from "resort to a provisional remedy, such as arrest, attachment, injunction, receivership, or notice of pendency").

Nothing of the kind has been alleged here.  Even if Dr. McClintic misrepresented the facts concerning plaintiff's February 13 visit, she did not employ legal process at all, much less to achieve some improper collateral end. *See Tojek v. Harris*, No. 19-CV-1470, 2021 WL 7904019, at *8 (W.D.N.Y. Sept. 23, 2021) (allegation that town supervisor's submission of an affidavit to a state official raising concerns about a town justice's carrying of a firearm in the town hall "did not constitute regularly issued legal process" sufficient to support an abuse-of-process claim), *R&R adopted in part, rejected on other grounds in part*, 2022 WL

-12-

976941 (W.D.N.Y. Mar. 31, 2022).  Plaintiff's request that he be allowed to amend the

complaint to add the words "abuse of process" is therefore denied, as such an amendment would

be futile.[3]


## CONCLUSION


The motion to dismiss the complaint by defendant Elysa McClintic (Dkt. #4) is granted,

and the complaint is dismissed as to Elysa McClintic.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
May 5, 2022.

_____

[3]Although plaintiff does not assert a medical malpractice claim, I note his allegation that the surgery
performed by Dr. McClintic was "botched" and that as a result he has been forced to undergo further procedures,
including "electrocution" [sic].  Complaint ¶ 40.  To the extent that these allegations comprise part of plaintiff's
request for compensatory damages, they are not cognizable in this federal lawsuit, regardless of the merits of
plaintiff's claims.